FILED'06 FEB 03 12:52USDC-ORE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,                No. 05-CR-60073-HO

    Plaintiff,                           ORDER

    v.

SERGIO VILLANUEVA-MADRIZ,

    Defendant.

Defendant is charged with possession with intent to distribute at least 500 grams of methamphetamine, eluding examination and inspection, and illegal reentry of deported alien. Defendant filed a motion to suppress drug evidence obtained during a consent search after a traffic stop. After hearing, the court took defendant's motion under advisement. Defendant contends there was not reasonable suspicion for the stop, the stop was excessive in scope and duration, and his consent to search was involuntary and unknowing. The initial

stop was justified by Oregon State Patrol (OSP) Rct. Katsikis's reasonable suspicion that defendant violated the basic speed rule. Rct. Katsikis reasonably expanded the scope and duration of the stop to confirm defendant's identity and to investigate for violations of federal and state criminal law. Defendant voluntarily consented to the search of his vehicle. Defendant's motion to suppress evidence is therefore denied.

## Discussion

Oregon State Patrol (OSP) Rct. Katsikis testified that he stopped defendant's vehicle shortly after 7:00AM[1] on May 27, 2005, after using recently calibrated moving radar to ascertain the vehicle's speed at 68 miles per hour in a posted 55 mile per hour zone. See Gov't Ex. 1 at 1, Gov't Opp. at 5, n. 3. Rct. Katsikis's suspicion that the driver of the van might be violating the basic speed rule was reasonable. See Or.Rev.Stat. § 811.100(1),(2)(b).

Defendant complains that from 7:12AM to 7:28AM he was held for investigation of an immigration violation and impermissibly asked questions about his travel itinerary, vehicle ownership and the names of his parents. The dispatcher informed Rct. Katsikis at approximately 7:12Am that defendant had an "immigration hit"

---

[1] Time references are to the time displayed on the videotape recording of the traffic stop, defendant's exhibit 10. The government contends that the actual time of events is fifteen minutes later than indicated on the videotape.

2 - ORDER

and is a previously deported felon, and that "Immigration" requested "immediate notification confirmation on a detainer availability." Def's Ex. 10 at 4. Rct. Katsikis had ample reason to suspect defendant might have committed the crime of illegal reentry of a deported alien. Questions regarding vehicle ownership and travel itinerary were justified to confirm defendant's true identity and as part of the investigation into immigration and speeding violations, and by Rct. Katsikis's knowledge that defendant, who produced an expired California driver's license, drove a vehicle with Oregon plates through the night from a location in California. See United States v. Chavez-Valenzuela, 268 F.3d 719, 724 n.4 (9th Cir. 2001). Because Rct. Katsikis knew defendant had an "immigration hit" and that federal authorities requested immediate notification, he reasonably continued the immigration investigation, including ascertaining the names of defendant's parents at the request of federal authorities. In the meantime, Rct. Katsikis reasonably continued his investigation into state law crimes, including driving with a suspended or expired license, operating a vehicle without authorization and drug trafficking. Rct. Katsikis's investigation prior to defendant's arrest approximately 26 minutes into the stop was reasonable in scope and duration.

Law enforcement officers can do more than was done here to ensure that consent to search is voluntary. After considering

3 - ORDER

the totality of the circumstances, however, the court finds that defendant voluntarily consented to the search of his vehicle. See United States v. Patayan Soriano, 361 F.3d 494, 501-02 (9th Cir. 2004). Trooper Davis asked for consent immediately after Rct. Katsikis arrested defendant and advised him of his Miranda rights. Guns were not drawn. Defendant was cooperative, and the Troopers were professional and courteous. Defendant was not advised of his right to refuse consent. Although English is not defendant's first language, defendant understood the words Trooper Davis used in asking for consent. Trooper Davis asked defendant if he wanted anything in his vehicle. Defendant responded, "jacket." Trooper Davis asked defendant if he could look in the vehicle. Defendant responded, "You can look." Trooper Davis said, "It's all right? Okay. I'll be looking for drugs and guns and money. That stuff. Any of that in there?" Defendant responded, "No."

Defendant contends that his consent was obtained during a detention prohibited by Or.Rev.Stat. § 181.850(1). Section 181.850(1) prohibits state law enforcement agencies and political subdivisions from using "agency moneys, equipment or personnel for the purpose of detecting or apprehending persons whose only violation of law is that they are persons of foreign citizenship present in the United States in violation of federal immigration laws." Section 181.850(1) is narrowly construed by Oregon's

courts. See State v. Rodriguez, 854 P.2d 399, 401-02 (Or. 1993). The statute does not plainly prohibit arrest by state law enforcement officers for violation of immigration laws discovered during the course of a traffic stop.

## Conclusion

Based on the foregoing, defendant's motion to suppress evidence [#19] is denied.

IT IS SO ORDERED.

DATED this 3rd day of February, 2006.

                          Michael R. Hogan
                          United States District Judge